Good morning. If it may please the Court, I'm Amitai Schwartz representing the appellant Christopher Boatman. I'd like to reserve two minutes for rebuttal. This is another case dealing with the governor's no parole policy. If Christopher Boatman had been, if the decision of the California Parole Board in 2002 had not been reversed by former Governor Gray Davis, Christopher Boatman would have been released from prison under supervision in April of 2003. It's now early 2008. The Christopher Boatman expressed remorse for his crime from the outset. He has no major disciplinary action the entire time he's served in prison. The psychiatrist who evaluated him in the year 2000, who evaluated him for the Board of Prison Terms, wrote that Mr. Boatman's propensity for violence is less than that of the average person. We submit that Mr. Boatman's case is actually stronger than Mr. Hayward's case in the Hayward v. Marshall case. Hayward was decided by a panel of this Court about ten days ago, and that case for the first time squarely held that it's a violation of federal due process to hold a prisoner under the California parole statute and regulations when there is not some evidence to support the finding that the prisoner is a danger to society. In the Hayward case, it took Mr. Hayward 15 years, as analyzed in the panel decision, before he expressed remorse for the second-degree murder that he had committed. Mr. Boatman expressed remorse from the time of the sentencing. He's expressed remorse throughout. He wasn't a – somebody who came late to the decision of the gravity of the crime that he had participated in that resulted in death. He was someone who recognized his failings at the time, apologized for his failings, said and felt the remorse. And he does – he has done everything that he can since the time that he was first incarcerated to redeem himself. He has been a model prisoner. Mr. Hayward had been a member of some prison gangs. Mr. Hayward had used drugs at an early point in his career, as in the prison. Mr. Boatman, on the other hand, has never been accused of being a member of any prison gang. That's the last thing anybody has ever accused him of. No one has ever accused him of using drugs within the prison system. He has been on a consistent course. And when you look at the 1996 parole hearing, which is in the record, where he first appeared at the very first parole hearing where they were assessing him, the parole commissioner said to him, there's no chance you're going to get out so soon because it's only 1996, but you're doing the best of practically any prisoner we've ever seen. And then six years later, in 2002, he comes to the – when he appears before the parole board, which is the decision that we have in this case, these commissioners go over his record. They count ten letters that are written on his behalf, ten, from his family, from instructors, talking about how well he did in the welding class, how he's become a journeyman, machinist. One of his instructors said in the letter that he wrote to the parole board that he is the most – the person most likely to succeed of any prisoner that he's seen. I think you're talking about things that you think should have been shown in his favor in the hearing. But that's not the issue before us. It's not whether you think or I think the board made a mistake. Our issue is very simple, and that's whether there's some evidence. To the contrary. So they looked at his escalating, as they called it, escalating events outside, two counts of rape against a 14-year-old girl. They look at the drug problem that he has. They're not sure that he's ready to go outside. Drugs constituted a problem for him before when he got involved with the murder. Now, why isn't that some evidence? And aside from I understand you think they were wrong, but we have to decide whether there's some evidence that indicates that if he does go out, he's going to have a problem. He may well have a problem to protect the public. The they was the parole board, and the parole board actually decided that those – that he was suitable for parole. It was the governor who overruled the parole board, and it's the governor's decision that we're contesting today. Now, the – as to the escalating criminality, these two counts of rape, as we pointed out in the brief, the record indicates that, in fact, it was a – he had had unlawful intercourse with a minor. The circumstances were, let's say, ambiguous, but it certainly did not result in a rape conviction. In fact, it didn't result in – The 14-year-old wouldn't testify against him, but the point is that the governor, as you quickly point out, says these acts, being arrested for rape under those circumstances, although he's not convicted, the governor has before him the actual facts, and his drug problems indicate that he's not – the public will not be safe. These are – these are, as Judge Gould put it in Hayward, these are static and stale facts in the sense that over 16 years had run at the time that the parole board found him qualified, suitable for parole. Remind me, in Hayward, the ones that were not factual, weren't those when Hayward was a juvenile? Some of the – some of the – yes. And this didn't occur when your client was a juvenile. He was an adult when he did the rape. He was an adult. He was over 18, but he was younger than 20. I think he was – I think he was 18 when he had this unlawful intercourse. So this case would be different from Hayward where it was done by a juvenile. Well, in that sense, it would be different. I mean, Hayward was also older. But the fact of the matter is that these are events that occurred over 16 years ago. As Judge Hugg originally pointed out in the Biggs case, how long can you keep counting these as some evidence? And when the ultimate question, the due process question, as Hayward points out, is whether he's going to be – whether there is some evidence that he's a danger to society today, not 10 years ago, not five years ago, but as of the time of the hearing. That's the question. And it's not a question of whether there are facts to support what the Governor said. It's a question of that overall suitability issue and whether he is still a danger to society. And the reason I'm stressing these redemptive factors is because the – let's say the negative factors are old. They're stale. There's nothing he can do about them. There's nothing he can do. They happened prior to his incarceration. And he's done everything he can do to be a better man. Okay. You have about a minute left if you want to say. Thank you. May it please the Court. Elizabeth Kim for Appley, the Warden of San Quentin State Prison. The resolution of this case is governed by the Anti-Terrorism and Effective Death Penalty Act. Thus, the issue before this Court is whether the State court decision upholding the Governor's parole denial is contrary to or involved in unreasonable application of clearly established United States Supreme Court law. The Superior Court found that there was some evidence that supports the Governor's decision. That decision should be accorded deference under ADEPA, which is the Anti-Terrorism and Effective Death Penalty Act. Also, at the time that the State courts denied Mr. Boatman's habeas corpus petitions, the clearly established law that governs the discretionary parole decision by the Board and the Governor is whether due process is the reasons for the parole denial if the parole is denied. Those were the due process requirements that were clearly established at the time. Here, there is no question that Mr. Boatman received these procedural protections relating to the 2002 parole proceedings. Therefore, under ADEPA, the State court decision affirming the Governor's decision cannot be contrary to or be an unreasonable application of the Greenhold's decision. This Court has held that the some evidence standard of review applies to the Board's parole determinations or in the Governor's parole determinations. However, that is not clearly established U.S. Supreme Court law. And most recently, in Kerry v. Mousladen and also a few days ago in Wright v. Van Patten, the U.S. Supreme Court has made clear that if there is not a controlling law squarely on the point addressing the issues in the case, then it cannot be said that the State court violated the provisions of Section 2254d. Therefore, habeas petition would be unauthorized. Even if there was an application of the some evidence standard of review, that standard of review is that which is set forth in Superintendent v. Hill. The State court has already made a determination that there is some evidence to support the Governor's decision. Therefore, under Hill, this Court is to look at the State court decision to determine whether there is any evidence, a modicum of evidence, even meager indirect evidence is sufficient to meet the standard. Also, under the some evidence standard of review of Hill, this Court is not to reweigh the evidence, as Mr. Boatman would have this Court do. May I ask a question? Yes. We are actually reviewing here the Governor's decision to overturn the parole board decision? Yes. Now, is the standard under which the Governor is to review the parole board, is that a question of State law? Under ADPA, it would be the standard of review. No. No. If California law gives the Governor the right to look at the parole board decision and overrule it. Yes. Now, but the standard that the Governor uses in order to decide whether or not to overrule it, isn't that a question of State law rather than Federal law? Yes. Yes, it is, because his authority is under the California Constitution. Right. For in this case, though, then this Court reviews the Governor's decision under the clearly established law for some evidence, which is Hill. So using the Hill sum evidence standard of review. I understand that. But that's only because the California law requires that there be some danger. Is that right? No. California law requires that there be some evidence to support the factual basis of the Board's or the Governor's decision. And that's the California Supreme Court law in Rose and Krantz. Yeah. Okay. I understand that. So the same standard for the Board and for the Governor? Yes, Your Honor. In this case, the Board has already made a determination that there is some evidence to support the Governor's decision. And so this reviewing court, this Court, it's not the role of this Court to reweigh the evidence, comparing the circumstances in Mr. Boatman's offense to some other cases that are set forth in some published cases in California, nor is it this Court's role to question the weight and the weight that the Governor may have given to any circumstances that show suitability or unsuitability for parole. The State court's determination is to reweigh the evidence. Reason? Pardon? It could be, then, a very frivolous reason if we don't look at it at all. No. Under the Hillsum Evidence Standard of Review, in that case, indirect evidence was sufficient to sustain the State court finding, and even meager evidence was sufficient. So any evidence to support the Governor's decision would be sufficient under the Hillsum Evidence Standard of Review. And so this court under Adipa would only look to see whether it was objectively unreasonable for the Government to determine, based on the facts of the crime, the escalating pattern of criminality, the need for substance abuse counseling, were all those reasons objectively unreasonable under the Hillsum Evidence Standard of Review? I take it that at the time a prisoner fulfills his maximum term, then he can get out. Of life? And many of these are 20 to life, and so unless they can get out, they're there until they die. No, Your Honor. Pardon? No, Your Honor. Their sentence is for life, just like Mr. Boatman's sentence is 16 years to life. So if there are factors showing unsuitability, I guess he could serve a life term. But the Board and the Governor's determination is, given the circumstance, all the circumstances are the same. I understand. I'm just saying that at the outside, a person could be sentenced 20 to life and spend their life there. Yes, on the outside, yes. So in Hayward, we took a look at it and say, but sooner or later, there should be some evaluation of what's happened since he got to prison. And so in Hayward, we said there was no real escalation. He was a juvenile at the time. Okay, our facts are a little different here, that he was an adult and he committed rape. Hayward, he had been a month experimenting with heroin. Here we have a long drug problem. I understand that. The drugs can get you into mischief. But is there a point in which those facts become so minimal in comparison with, say, 20 years in prison, that we can then say that there are not good cause, there is not, or that the state court unreasonably found that there was good cause? Is there a point along the continuum? I think that would be up to the Board or the Governor's discretion. I think that the fact of the commitment events, the manner in which the offense was unsuitability for parole, those are always relevant. They should always be considered by the parole authority, whether it be the Board or the Governor. However, should the weight, and it's up to the Board or the Governor's discretion to decide how much weight should be given to the circumstances of the offense or how much weight should be given to what he did prior to the incarceration. And that goes to the discretion of the Governor. And the discretion of the Governor cannot be reviewed under this Court's ADIPA, some evidence standard of review. It's whether it was objectively unreasonable, not his subjective reasoning for finding an unsuitability factor. Was it unreasonable based on those circumstances given his – Is that what you understand Hayward to say? No. Hayward, Your Honor, is factually distinguishable and also legally not binding on this Court because under this decision, under this Court's decision in Duhaime, this Court cannot reverse a state court decision merely because that decision conflicts with the Ninth Circuit precedent. And it's factually distinguishable in that case because we don't have a situation where Mr. Boatman has served over 20 years in prison at the time the Governor reversed his parole grant. We have Mr. Boatman in 2002 having served 15 years of his 16 years to life sentence. Well, you're saying it's distinguishable. It's very – But it's binding as a matter – its legal principles are binding. No, Your Honor. Also, the legally, it was based on – it's nonbinding because it was based on California law that's questionable. Well, this is what I was wondering. What is – has California decided what it's going to do, whether it's going to petition for rehearing in Hayward? It has granted review in the Lawrence case, Cooper case, Shaputo's case, and Jacobson cases. And all those cases will decide, the Supreme Court will decide whether it's some evidence to support the factual basis or is it some evidence as to the ultimate conclusion that he would pose an unreasonable risk if released to parole. Well, but Hayward is a decision of this Court. Yes. Hayward is a decision of this Court that doesn't rely on correct California law. Well, so my question is, has the State decided whether they're going to petition this Court for rehearing in Hayward? I think that they – yes. In Hayward, I think that those – that process is in the works right now.  I want to clarify one fact. My understanding is that at the time of his last application for parole, he had served his full 16 years. Is that wrong? The last – even in 2002, Your Honor? The question here, we're dealing with a 2002 decision. And in 2002, he had not served 16 years of his 16-year-to-life sentence. 2002 is what? It's 15 years in two sentences. But whose decision? Oh, 2002, the Board granted parole, and then the Governor reversed parole in the same year. The same year. Yes. Okay. Okay. You have used your time. Thank you. Are there any further questions? Okay. Thank you. Mr. Boatman was arrested on June 2nd, 1986. The parole hearing occurred in July 2002. That's 16 years. The – he – the record shows that he was not released on bail. He had, in fact, postponed his sentencing because he was sentencing against – because he was testifying against the – one of the accomplices. He – a full 16 years had gone by at the time of the parole board hearing. And this is heavily briefed in the briefs. I just want to address Judge Wallace's question about the so-called rape, and I'm going to call it a so-called rape because it was not even significant enough to be used in the probation report that was used in sentencing Mr. Boatman back in 1986, 1987. So it clearly – I mean, it's been – it's been conflated into something more than I think it is. And to use that 16 years later, 21 years later, as the evidence that he is presently unsuitable or a danger to society I think violates due process. Thank you. Thank you, Counsel. The case just argued is submitted. We'll hear it.
judges: Wallace, Hug, Schroeder